So Ordered.

Signed this 12 day of August, 2025.



_____

Wendy A. Kinsella

United States Bankruptcy Judge

**UNITED STATES BANKRUPTCY COURT**
**NORTHERN DISTRICT OF NEW YORK**

| | |
|---|---|
| In re: | Case No. 24-30534 |
| David M. Dow, | Chapter 7 |
| Debtor. | Judge Wendy A. Kinsella |
| First National Bank of Groton, | |
| Plaintiff, | |
| v. | Adv. Pro. Nos. 24-50006 |
| David M. Dow, | and 24-50007 |
| Defendant. | |

**MEMORANDUM-DECISION AND ORDER**

Before the Court are two adversary proceedings brought by creditor First National Bank of Groton ("Plaintiff") against David M. Dow ("Defendant"). The first action seeks denial of Defendant's discharge (the "Denial of Discharge AP" at Adversary Proceeding No. 24-50006) and the second proceeding seeks to have the debt arising from a certain loan from Plaintiff be declared

non-dischargeable (the "Loan Dischargeability AP" at Adversary Proceeding No. 24-50007).[1] Plaintiff seeks relief under 11 U.S.C. §§ 727(a)(3)[2] and (a)(4)(A),[3] and 11 U.S.C. § 523(a)(2)(B),[4] alleging fraud, false representations and material omissions on the part of the Defendant and also claiming Defendant submitted a false statement which resulted in a loan from Plaintiff that should not be discharged.

## I.     Jurisdiction

The Court has jurisdiction to hear and decide these cases pursuant to 28 U.S.C. §§ 1334(b), 157(a), (b)(1), (b)(2)(I), and (b)(2)(J). This Memorandum-Decision and Order incorporates the Court's findings of fact and conclusions of law as permitted by Fed. R. Bankr. P. 7052.

## II.    Factual Background

Defendant filed a chapter 7 bankruptcy petition on June 26, 2024 (the "Petition Date"). Subsequently Plaintiff filed these two adversary proceedings. In his answers, Defendant denied all allegations, and asserted the affirmative defense that Plaintiff failed to state a claim upon which relief could be granted. The Court held a trial on May 28, 2025 (the "Trial"), after which the Court directed the parties to submit post-trial briefs and took the matter under advisement.[5]

---

[1] Although Plaintiff filed two adversary proceedings, due to the identical parties and facts, only one trial was held. As a result, both actions will be addressed together in this Memorandum-Decision and Order.
[2] Unless otherwise indicated, all sectional references are to Title 11 of the United States Code.
[3] Plaintiff's Post-Trial Submission expressly stated it was not proceeding under 11 U.S.C. § 727(a)(5).
[4] Plaintiff's Post-Trial Submission expressly stated it was proceeding only under 11 U.S.C. § 523(a)(2)(B).
[5] The evidentiary record includes:
  (i)     the Complaints (Denial of Discharge AP at Doc. 1 and Loan Dischargeability AP at Doc. 1);
  (ii)    the Summonses (Denial of Discharge AP at Doc. 2 and Loan Dischargeability AP at Doc. 5);
  (iii)   the Joint Stipulation of Undisputed Facts (Denial of Discharge AP at Doc. 15 and Loan Dischargeability AP at Doc. 17);
  (iv)    Defendant's List of Witnesses and Exhibits (Denial of Discharge AP at Doc. 14 and Loan Dischargeability AP at Doc. 16);
  (v)     Plaintiff's Witness List and Plaintiff's Summary List of Exhibits (Denial of Discharge AP at Doc. 16 and Loan Dischargeability AP at Doc. 18);
  (vi)    the following Exhibits introduced by Plaintiff: (a) Chapter 7 Bankruptcy Petition for David M. Dow dated June 24, 2024 ("Exhibit A" or the "Petition"); (b) Business Loan Application dated July 20, 2021 ("Exhibit B" or "Loan Application"); (c) List of Assets ("Exhibit C" or "Asset List"); (d) Promissory Note and Security Agreement dated July 27, 2021 ("Exhibit D"); (e) Guaranty dated July 27, 2021

Prior to the bankruptcy filing, Defendant was the President and a shareholder of A Burger Shack & More Corporation (the "Restaurant"). *See* Petition at 43; Exhibit F. As President, Defendant executed a loan agreement dated July 27, 2021 between Plaintiff and the Restaurant in the amount of $7,500.00 (the "Loan") allegedly secured by $21,000.00 of restaurant equipment (the "Collateral"), which Defendant personally guaranteed. *See* Exhibit B; Exhibit C; Exhibit D and Exhibit E. Plaintiff contends the Loan was approved based on materially false representations made by Defendant in the Loan Application, and that Defendant made the false representations intending to deceive Plaintiff, and upon which Plaintiff reasonably relied. Specifically, Plaintiff alleges that certain items of Collateral were not owned by the Restaurant, nor did Defendant or the Restaurant have any ability to grant Plaintiff a security interest in them, contrary to the representations made by Defendant. Further, Plaintiff alleges that Defendant made false statements in his Petition and under oath in his bankruptcy proceedings in connection with undisclosed assets and the Restaurant business; failed to disclose certain assets and transfers; and failed to retain or destroyed business records.

---

("Exhibit E" or "Guaranty"); (f) Certificate of Incorporation, A Burger, Shack & More, Corporation ("Exhibit F"); (g) Corporate Authorization Resolution dated July 26, 2021 ("Exhibit G"); (h) Checking Account document dated July 27, 2021 ("Exhibit H"); (i) UCC–1 Financing Statement ("Exhibit I"); (j) Transcript of 341 Meeting held August 2, 2024 ("Exhibit J" or "341 Meeting Transcript"); (k) Commercial Lease between Gneiss Properties, LLC and David Dowd and Jennifer Johnson commencing July 1, 2021 ("Exhibit M"); (l) A Burger Shack & More – 2021 U.S. Income Tax Return for an S Corporation ("Exhibit O");

(vii)   (a) the Testimony of David Dow, Defendant; and (b) the Testimony of Nicholas P. Brown, Witness for First National Bank of Groton ("Mr. Brown");
(viii)  Plaintiff's Post-Trial Submission (Denial of Discharge AP at Doc. 28 and Loan Dischargeability AP at Doc. 27);
(ix)    Defendant's Post-Trial Memorandum (Denial of Discharge AP at Doc. 29 and Loan Dischargeability AP at Doc. 28); and
(x)     Trial Transcript (the "Transcript of Hearing") (Denial of Discharge AP at Doc. 32 and Loan Dischargeability AP at Doc. 31).

### III. The Trial

At the Trial, Defendant admitted he was President of the Restaurant and signed the Loan Application in his capacity as President. Transcript of Hearing, 7:1–9:9. Defendant further testified that, as President, he applied for and obtained the Loan, which was secured by the Collateral, and he and his fiancée executed the Guaranty. *Id.*, 18:23–20:11; Exhibit B, Exhibit C, Exhibit D and Exhibit E. Defendant testified that several items on the Asset List identified as business assets had never been owned by the Restaurant, and instead were owned by Defendant individually, or were owned by the landlord of the Restaurant space, Gneiss Properties, LLC ("Landlord") or were leased from Click Lease.[6] Transcript of Hearing, 20:15–32:3. In reviewing the business assets on the Asset List totaling $21,000.00 that were allegedly being pledged in connection with the Loan, Defendant testified that $14,400.00 of that equipment was not owned by the Restaurant. *Id.*[7] He confirmed the 1995 Bayliner Boat and Trailer worth $10,000.00 and a 5x8 trailer worth $750.00, identified as personal assets on the Asset List, belonged to him. *See id.*, 47:4–13; Exhibit C. He explained that because the Restaurant had a right of first refusal to purchase the real property from the Landlord, the Landlord's Equipment would be included with the real property purchase and would eventually belong to the Restaurant. *See id.*, 42:8–18. He stated Plaintiff's loan officer, Mr. Brown, was aware of the lease with Click Lease and knew the Landlord's Equipment and several other items of collateral were not actually owned by the Restaurant but nevertheless told Defendant to list them when applying for the Loan. *See id.*, 41:2–

---

[6] Throughout the Trial, the parties referred to the lessor as "Quick Lease;" the Court notes the Loan Application referred to Click Lease and as such infers the parties were referring to the equipment leased from Click Lease at Trial.
[7] Included in the Asset List was a Blodgett pizza oven and 3 standup freezers owned by the Landlord with a total value of approximately $6,000.00 (the "Landlord's Equipment").

4

42:7.  Defendant stated the handwriting on the Asset List that noted the business assets had "No Debt on These" was written by Mr. Brown. *See id.*, 34:23–35:19; Exhibit C.

Defendant further testified that around the time the Restaurant closed in October 2022, he sold certain items of Collateral through Facebook Marketplace, but the sales records are no longer available. Transcript of Hearing, 20:15–32:3.  He explained the sales required negotiations and "hundreds upon hundreds" of messages, which he deleted afterward, with the sale prices varying from the original sale prices he listed on the social media platform. *Id.*, 44:6–45:9.

Defendant also acknowledged that he failed to disclose those sales and his ownership of certain Collateral and other assets in his Petition. *Id.*, 22:25–25:8.  Examining the 341 Meeting Transcript and the transcript of Defendant's Rule 2004 examination, Plaintiff's counsel inquired about a number of inconsistent statements that Defendant made on the stand when compared with those statements made under oath prior to the Trial.  *Id.*  These inconsistencies include: (1) Defendant's failure to disclose on Form 107 that he was storing property in a place other than his home; and (2) a statement that he had advised the Chapter 7 trustee that he had sold certain of the Collateral, when in fact he did not make that disclosure. *Id.*, 22:25–25:8 and 31:8–32:1.  On examination by Defendant's counsel, Defendant clarified that the stored equipment was essentially valueless catering equipment that was being kept at his parents' home in a trailer that was no longer operable.  *Id.*, 45:14–46:1–14.

Plaintiff's representative, Mr. Brown, testified that he had worked for Plaintiff for 24 years, and as a retail lending officer for 6 years. *Id.*, 55:4–19.  In his role as a retail lending officer, Mr. Brown was responsible for, *inter alia*, extending loans and checking over credit. *Id.*, 55:10–13. Mr. Brown discussed the Loan application process, and the documents submitted by Defendant in

5

support of the application. *Id.*, 56:15–64:23. Mr. Brown testified he had known Defendant for a number of years prior to the Loan transaction. *See id.*, 56:19–24.

During examination, Mr. Brown confirmed the Loan was granted by Plaintiff based on the Loan Application and Asset List, and that Plaintiff relied on those documents in making the Loan. *See id.*, 60:11–18. Mr. Brown claimed he did not recall any discussions concerning the Collateral; it was his recollection and understanding that the Collateral was owned by the Restaurant. Mr. Brown remembered a conversation with Defendant involving Click Lease but erroneously recalled the terms of the arrangement. *Id.*, 58:13–60:10. Mr. Brown then testified that if it was known at the time that the Restaurant did not own the Landlord's Equipment and that certain other Collateral was owned by Defendant rather than the Restaurant, Plaintiff would not have made the Loan. *Id.*, 65:9–22.

IV.     **Legal Analysis**

While there is significant overlap in the facts and allegations in these proceedings, each cause of action requires different elements to be satisfied. The Court will therefore address each claim separately.

a.     **Denial of Discharge under 11 U.S.C. § 727**

At the outset, the Court notes "'[o]ne of the central purposes of the Bankruptcy Code and the privilege of discharge is to allow the 'honest but unfortunate debtor' to begin a new life free from debt.'" *D.A.N. Joint Venture v. Cacioli* (*In re Cacioli*), 463 F.3d 229, 234 (2d Cir. 2006) (quoting *Grogan v. Garner*, 498 U.S. 279, 286–87(1991)). The extreme penalty of denial of a debtor's discharge under section 727(a) "must be construed strictly against those who object to the debtor's discharge and 'liberally in favor of the bankrupt.'" *State Bank of India v. Chalasani* (*In*

6

re Chalasani), 92 F.3d 1300, 1310 (2d Cir. 1996). "The party seeking denial of discharge bears the burden of establishing each element of a § 727(a) claim by a preponderance of the evidence." *Harrington v Beaudry* (*In re Beaudry*), 549 B.R. 576, 582 (Bankr. N.D.N.Y. 2016) (citing *Grogan v. Garner*, 498 U.S. at 287).

It is well established that the "fresh start" provided to debtors by the discharge may not be granted to debtors that have engaged in wrongdoing. *See Grogan v. Garner*, 498 U.S. at 286–87. A court "should weigh the detriment to the proceedings and the dignity of the court against the potential harm to the debtor if the discharge is denied." *In re Kokoszka,* 479 F.2d 990, 997–98 (2d Cir. 1973), *aff'd sub nom. Kokoszka v. Belford*, 417 U.S. 642 (1974). In doing so, it "should consider such factors as the intent behind the bankrupt's acts—were they willful or was there a justifiable excuse; was there injury to the creditors; and is there some way that the bankrupt could make amends for his conduct." *Id.* at 998.

i. 11 U.S.C. § 727(a)(3)

Under section 727(a)(3), denial of discharge is warranted if "the debtor has concealed, destroyed, mutilated, falsified, or failed to keep or preserve any recorded information, including books, documents, records, and papers, from which the debtor's financial condition or business transactions might be ascertained, unless such act or failure to act was justified under all of the circumstances of the case." 11 U.S.C. § 727(a)(3). This provision requires a two-step approach: (1) the creditor bears the initial burden to show that "the debtor failed to keep and preserve any books or records from which the debtor's financial condition or business transactions might be ascertained;" (2) if the creditor meets that burden, the burden shifts to the debtor to prove that "his failure to produce them was justified." *In re Cacioli*, 463 F.3d at 235.

7

To prove that a debtor has not supplied the substantially complete and accurate records required by section 727(a)(3), a creditor may show either "(1) the inadequacy of the provided records . . . or (2) the impossibility of ascertaining 'the debtor's present financial condition and the nature of any business transaction that occurred within a reasonable period prior to filing' from the tendered records." *In re Antoniou*, 527 B.R. 71, 79 (Bankr. E.D.N.Y. 2015) (quoting *State Bank of India v. Sethi* (*In re Sethi*), 250 B.R. 831, 837–38 (Bankr. E.D.N.Y. 2000)).

Plaintiff alleges Defendant should be denied a discharge because he made statements and representations that were false by failing to disclose his interest in a business a vehicle, and restaurant equipment. In addition, Plaintiff alleges Defendant failed to disclose both an accurate value of restaurant equipment, as well as the sale of certain equipment within 2 years of the Petition Date. Finally, Plaintiff highlights that Defendant failed to keep, and in fact, deleted business records regarding said Facebook Marketplace sales, as well as failed to list the Landlord as a creditor. By deleting the records of the sales, the financial information regarding the sales prices and the identity of the buyers of the equipment valued at approximately $9,200.00 on the Asset List was not available; thus Defendant failed to preserve records concerning his financial condition or business transactions.[8] In opposition, Defendant alleges the assets that were sold were personal and therefore the "sales records" were not business records to be retained in the ordinary course of business. Transcript of Hearing, 44:6–45:17.

Plaintiff has shown that Defendant did not supply the substantially complete and accurate records required by section 727(a)(3). The sale of the certain Collateral should have been preserved to ascertain the Defendant's financial condition. The evidence at trial demonstrated that

---

[8] Defendant testified that only "some" of the catering equipment was sold and that he "still [has] a truck full of it." Transcript of Hearing, 28:20–29:9. Defendant's Petition values the equipment at $1,000.00. *See* Petition at p. 15.

Defendant did not keep records of either the sale listings or the details of the consummated sales. Transcript of Hearing, 20:15–32:3.

With Plaintiff having met its burden, the burden shifts to Defendant to show there was a "justified" reason for failing to keep records, which is "a question in each instance of reasonableness in the particular circumstances." *In re Cromer*, 214 B.R. 86, 97–98. (Bankr. E.D.N.Y. 1997). To determine the reasonableness of a debtor's failure to keep books, a court examines eight non-exclusive factors:

> (1) whether the debtor was engaged in business, and if so, the complexity and volume of the business;
> (2) the amount of the debtor's obligations;
> (3) whether the debtor's failure to keep or preserve books and records was due to the debtor's fault;
> (4) the debtor's education, business experience, and sophistication;
> (5) the customary business practices for record keeping in the debtor's type of business;
> (6) the degree of accuracy disclosed by the debtor's existing books and records;
> (7) the extent of any egregious conduct on the debtor's part; and
> (8) the debtor's courtroom demeanor.

*See In re Moreo*, 437 B.R. 40, 51 (E.D.N.Y. 2010).

Defendant was employed in at least three small restaurant businesses and had two associate degrees, one in culinary arts and one in computer information systems. Transcript of Hearing, 5:14–23, 9:10–11:10. In addition, his business partner and fiancée was a certified public accountant. *Id.*, 36:5–16. Defendant admitted he failed to keep and preserve the sales records. Applying factors 1, 3, and 4, these facts weigh in favor of a finding that Defendant's behavior was not justified.

In considering factors 2, 5, 6, 7 and 8 of the *In re Moreo* test, the Court finds those factors weigh in favor of Defendant. Defendant's total unsecured debt, including the debt owed to

9

Plaintiff, totals $71,202.00. *See* Petition, p. 29.[9] Defendant is seeking a discharge of a reasonable amount of personal debt. The Restaurant was a small business that did not strictly follow bookkeeping and corporate formalities. Defendant testified the sale transactions and corresponding records were generated through Facebook Marketplace approximately 20 months before the Petition Date. When assessing if there was a "justified" reason for failing to keep records and answering the question of reasonableness in these particular circumstances, the Court considers the nature of the equipment sold and Defendant's testimony regarding the number of Facebook inquiries and the amount of the proceeds, and concludes it is not unreasonable that those social media records were not preserved. In addition, the Court believes Plaintiff was able to assess Defendant's present financial condition and the nature of the business transactions that occurred within a reasonable period prior to the Petition Date. Notably, the Chapter 7 Trustee filed a No Asset Report after conducting the 341 Meeting of Creditors, thereby implying he was confident he had information sufficient to assess Defendant's financial condition. Doc. 9. The Court finds Defendant did not engage in egregious conduct and his courtroom demeanor was appropriate. While Defendant's record keeping may reflect a poor business practice, the Court concludes those actions do not justify the extreme penalty of denying his discharge under section 727(a)(3).

    ii.   11 U.S.C. § 727(a)(4)

Under 11 U.S.C. § 727(a)(4)(A), a court will deny discharge if "the debtor knowingly and fraudulently, in or in connection with the case . . . (A) made a false oath or account."

The Second Circuit has held, "[t]o prove a § 727(a)(4)(A) violation, a creditor must show that: '1) the debtor made a statement under oath; 2) the statement was false; 3) the debtor knew

---

[9] This amount also includes $27,576.00 in student loan debt and approximately $14,000.00 in priority tax debt.

10

the statement was false; 4) the debtor made the statement with fraudulent intent; and 5) the statement related materially to the bankruptcy case.'" *Abraham v Stuart* (*In re Abraham*), 693 F App'x 59, 61 (2d Cir. 2017) (quoting *In re Boyer*, 328 F. App'x 711, 715 (2d Cir. 2009) (summary order) (quoting *Keeney v. Smith* (*In re Keeney*), 227 F.3d 679, 685 (6th Cir. 2000)); *see In re Robinson*, 506 F.2d 1184, 1186–87 (2d Cir. 1974).

"Statements in the Debtor's filed schedules and statement of financial affairs as well as the Debtor's testimony at the 341 meeting and his Rule 2004 deposition constitute statements under oath for purposes of § 727(a)(4)(A). Both omissions and affirmative misstatements qualify as false statements under § 727(a)(2)(A)." *Beaudry*, 549 B.R. at 585 (citing *In re Moreo*, 437 B.R. 40, 60 (E.D.N.Y. 2010)) (quotation marks and citation omitted).

Plaintiff argues Defendant failed to disclose information in his schedules and statement of financial affairs ("SOFA") and falsely testified at his 2004 Examination that he had advised the Chapter 7 trustee that he had disposed of the assets discussed above. Defendant's testimony confirmed he omitted listing his corporation as an asset and failed to include all restaurant equipment on his schedules. He also omitted the Facebook Marketplace sales transactions from his SOFA, and failed to disclose the catering equipment and trailer stored at his parents' property. The Court finds these omissions constitute false statements made under oath that Defendant knew were false, satisfying the first 3 elements of section 727(a)(4)(A).

With respect to the fourth element, the element of fraudulent intent may be established by "evidence of either (1) actual intent to deceive or (2) reckless disregard for the truth." *In re United General Title Ins. Co. v. Karanasos* (*In re Karanasos*), 2014 U.S. Dist. LEXIS 124583, 2014 WL 4388277 (E.D.N.Y. 2014) (citing *Adler v. NG* (*In re Adler*), 395 B.R. 827, 843 (E.D.N.Y. 2008)). A reckless indifference for the truth supports a finding of fraud. *See Diorio v. Kreisler-Borg Const.*

11

Co. (*In re Diorio*), 407 F.2d 1330 (2d. Cir. 1969). However, fraudulent intent will not be found where a false statement is the result of carelessness or ignorance. *Id.*; *In re Handel*, 266 B.R. 585, 590 (Bankr. S.D.N.Y. 2001). "'As the Second Circuit has recognized, fraudulent intent may be inferred from a series of incorrect statements contained in the schedules.'" *Beaudry*, 549 B.R. at 585 (quoting *In re Casado*, 187 B.R. 446 (Bankr. E.D.N.Y. 1995) (citing *In re Diorio*, 407 F.2d at 1331; *In re Kaiser*, 722 F.2d 1574, 1584 n.4 (2d Cir. 1983))).

The Court found Defendant credible in his testifying regarding the omissions.[10] Regarding the failure to list certain assets, he made various statements that "it completely slipped my mind" (regarding the box end trailer storing catering equipment) and "it just didn't register with me" (referring to the equipment sales). Transcript of Hearing, 45:3–46:14. He stated he misunderstood the question asked about disclosing the Facebook Marketplace sales to the Trustee and did not think to disclose the trailer box that held the catering equipment with *de minimus* value was at a place other than his home. While Defendant should have been more complete in his schedules, the Court finds Defendant's testimony credible and the omission of certain assets was inadvertent. The Court will not find fraudulent intent based on this carelessness or ignorance.[11]

The final element requires that the false statement be related materially to the bankruptcy case. Here, the omissions are clearly related to the bankruptcy case, but the question remains what is material. "Materiality is found if the false oath is related to the debtor's business transactions, concerns the discovery of assets, business dealings, or the existence or disposition of the debtor's property. Omissions are material if they impact the trustee's ability to discover other assets, fully investigate pre-bankruptcy dealings, financial condition, and discovery of preference or avoidance

---

[10] Defendant acknowledged the Landlord was not listed as a creditor but testified he did not believe he owed the Landlord any money and therefore did not list it. Transcript of Hearing, 51:13–52:17.

[11] As section 727(a)(4)(a) is written in the conjunctive and requires all elements to be satisfied, the analysis may end here. In an effort to be thorough, the Court will complete the analysis.

actions." *Pereira v Gardner (In re Gardner)*, 384 B.R. 654, 667 (Bankr. S.D.N.Y. 2008) (citation omitted).

In assessing the totality of the circumstances and the Defendant's financial affairs when compared with the nature and amount of omissions, the Court holds the omissions are not material. The false statements involved assets and transactions that lacked significant value. Moreover, the Trustee was able to fulfill his investigative duties as evidenced by the filing of the No Asset Report. As a result, Plaintiff has failed to establish all elements under section 727(a)(4), and the claim fails.

### b. Dischargeability of the Loan under 11 U.S.C. § 523(a)(2)(B)

Plaintiff further alleges its Loan to Defendant should not be discharged under section 523(a)(2)(B), which provides a debtor will not be discharged from any debt that was obtained by use of a statement in writing:[12]

> (i) that is materially false;
> (ii) respecting the debtor's or an insider's financial condition;
> (iii) on which the creditor to whom the debtor is liable for such money, property, services, or credit reasonably relied; and
> (iv) that the debtor caused to be made or published with intent to deceive.

11 U.S.C. § 523(a)(2)(B).

"A creditor suing under § 523(a)(2)(B) must prove each element by a preponderance of the evidence." *Nat'l Union Fire Ins. Co. v. Bonnanzio (In re Bonnanzio)*, 91 F.3d 296, 300 (2d Cir. 1996). A statement is materially false if "it paints a substantially untruthful picture of a financial condition by misrepresenting information of the type which would normally affect the decision to grant credit." *In re Kovacs*, 2021 Bankr. LEXIS 1094 at *7. "A statement is 'respecting a debtor's financial condition' if it has a direct relation to or impact on the debtor's overall financial status."

---

[12] A statement in writing means the debtor "either wrote, signed, or adopted such statement to find that the documents were 'written' by them." *30 Thompson AW Holdings, LLC v. Kovacs (In re Kovacs)*, Nos. 8-18-75875-las, 8-19-08028-las, 2021 Bankr. LEXIS 1094, *29 (Bankr. E.D.N.Y. Apr. 23, 2021).

*Id.* at *18 (citing *Lamar, Archer & Cofrin, LLP v. Appling*, 584 U.S. 709, 720 (2018)).  Reasonable reliance occurs when "the statement is of such a nature that a reasonably prudent person would rely on it."  *Capozzolo v. Grow Am. Fund, Inc.*, 626 F. Supp. 3d 612, 619 (W.D.N.Y. 2022).  However, the standard is not strict, as "[reasonable reliance] cannot be said to be a rigorous requirement, but rather is directed at creditors acting in bad faith." *In re Bonnanzio*, 91 F.3d 296, 305 (2d Cir. 1996).  Finally, the "[d]ebtor's intent to deceive may be established through circumstantial evidence and inferred from the totality of the evidence presented."  *Capozzolo*, 626 F. Supp. 3d at 618.

Here, Defendant generated the Asset List that was materially false with respect to the Restaurant's assets.[13]  Plaintiff's representative testified Plaintiff relied on the Asset List to grant the Loan.  While Defendant argues that Plaintiff's reliance was not reasonable because it failed to confirm ownership of the Collateral and conduct due diligence in connection with approving the Loan, the Court finds such reliance was reasonable and that Plaintiff acted in good faith, meeting the "low hurdle" standard of reasonable reliance under section 523(a)(2)(B). *See In re Wong*, 291 B.R. 266, 275–76 (Bankr. S.D.N.Y. 2003) ("[C]reditors are not required to conduct an investigation outside of ordinary business practices before entering into agreements with prospective debtors."); *In re Jemal*, 516 B.R. 238, 246 (Bankr. E.D.N.Y. 2014) ("A creditor is not obligated to conduct a thorough investigation of the representations a debtor makes in the course of extending credit").

The final element is whether Defendant caused the Asset List to be made or published with an intent to deceive.  "[I]ntent to deceive may be inferred when the totality of the circumstances presents a picture of deceptive conduct by the debtor, which indicates that he did intend to deceive and cheat the lender."  *Hong Kong Deposit and Guaranty Ltd. v. Shaheen* (*In re Shaheen*), 111

---

[13] The Restaurant is an insider of Defendant.  11 U.S.C. §101(31)(A)(iv) ("The term 'insider' includes if the debtor is an individual – corporation of which debtor is a director, officer or person in control").

14

B.R. 48, 53 (S.D.N.Y. 1990) (quotation marks and citation omitted)). "Intent can be found where a debtor either made a statement knowing that it was false, or made it with such reckless disregard of the truth so as to be the 'equivalent of intent to defraud.'" *Capozzolo*, 626 F. Supp. 3d at 609–10 (citations omitted). "A debtor's unsupported assertions of an honest intent will not overcome the natural inferences from admitted facts." *Id.* at 610 (quotation omitted).

The evidence demonstrated the Asset List was submitted with the Loan Application to reflect the Restaurant's financial condition. Defendant knew the Asset List was inaccurate in that most of the Collateral was not owned by the Restaurant. Transcript of Hearing, 20:4–8. Based on the circumstances, the Court infers Defendant intended to deceive Plaintiff into believing it was receiving Collateral as security for the Loan. *See* Loan Application; Transcript of Hearing, 20:4–8, 20:15–21:19, 46:21–47:3. In light of the evidence presented, the Court finds Plaintiff has satisfied its burden under section 523(a)(2)(B) and the debt owed to Plaintiff for the balance of the Loan is therefore not dischargeable.

V.     **Conclusion**

For the foregoing reasons, the Court denies Plaintiff's request to deny Defendant's discharge under section 727 in the Denial of Discharge AP, but holds the balance of the Loan due to Plaintiff is non-dischargable under section 523(a)(2)(B) in the Loan Dischargeability AP. Plaintiff is directed to submit a detailed statement of amounts due under the Loan as of the Petition Date including principal, interest and other charges by September 12, 2025 and Defendant shall have 21 days to object to said statement. The Court will schedule additional proceedings if necessary to establish the amount due prior to entering a judgment in favor of Plaintiff.

###